IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHEILA CHUNG,<br><br>  Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>  Defendant. | CIV. NO. 23-00619 JMS-KJM<br><br>ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS |

**ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS**

**I. INTRODUCTION**

Plaintiff Sheila Chung ("Chung" or "Claimant") seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, Martin O'Malley ("Commissioner"), finding Chung not disabled for purposes of her request for Supplemental Security Income disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 et seq.[1] The Commissioner adopted Administrative Law Judge ("ALJ") David Romeo's

---

[1] Claimant is not challenging the ALJ's decision regarding Social Security Disability Insurance benefits under Title II of the Act.  *See* ECF No. 10 at PageID.1338 ("[Chung] appeals only the Supplemental Security Income disability denial.").  "This means this appeal only addresses whether . . . [Chung] was disabled since February 1, 2021."  *Id.*

January 20, 2023 written decision, finding Claimant not disabled ("Decision").

Claimant argues the ALJ made reversible errors in determining whether she is disabled by (1) rejecting the psychiatric opinions of Drs. Dale Higashino, PsyD, and Nicole Aurellano, PsyD, without properly considering the supportability and consistency of the opinions as required by the Act's regulations, *see Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); and (2) by completely ignoring opinions of psychologists Heide Kiyota, PhD, and "Dr. Cumes" (according to a stamped signature line on relevant documents).

The court agrees that the ALJ did not properly assess supportability in rejecting Dr. Higashino and Dr. Aurellano's opinions, and that the errors were not harmless. Accordingly, the court REVERSES the Commissioner's final decision and REMANDS the matter for further proceedings.

## II. BACKGROUND

### A. The ALJ's Findings and Decision

The Social Security Administration ("SSA") requires an ALJ to assess disability[2] through a five-step sequential analysis, which asks:

---

[2] A claimant is "disabled" for purposes of the Social Security Act if (a) she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

>   (1)  Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled and not entitled to disability insurance benefits.  If not, proceed to step two.
>
>   (2)  Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
>   (3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled and therefore entitled to disability insurance benefits.  If not, the claimant's residual functional capacity ("RFC") is determined in preparation for step four.
>
>   (4)  Does the claimant possess the RFC[3] to perform her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
>   (5)  Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled), 416.920 (same)); *see also Woods*, 32 F.4th at 787 n.1 (stating that the 2017 revised Social Security regulations do not alter the familiar "five-step sequential evaluation process").  For

---

[3] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)).  A plaintiff's RFC is "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

3

steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the claimant reaches step five, the burden shifts to the Commissioner. *Id*.

The issue before the court is straightforward, and the parties agree that this administrative appeal centers on the RFC determination. As analyzed to follow, the alleged error of the ALJ in inadequately addressing supportability could have resulted in an improper assessment of Claimant's RFC and ability to work when considered with the claimant's age, education, and work experience. After reiterating applicable standards, the court proceeds directly to analyzing the supportability and consistency of the ALJ's rejection of the opinions of Drs. Higashino and Aurellano.

**B.    Procedural Background**

On July 26, 2021, the Commissioner denied Claimant's claim and on November 22, 2021, denied the claim on reconsideration. AR 86, 87.[4] Claimant timely requested a hearing that took place on December 2, 2022, at which Claimant and a vocational expert testified. AR 39–64, 129–130. On January 20, 2023, the ALJ issued his Decision finding Claimant not disabled. AR 22–33. The Appeals

---

[4] The Administrative Record ("AR") is numbered sequentially from pages 1 to 1301 and is available at ECF Nos. 8 through 8-8.

Council denied Claimant's request for review on October 23, 2023, which rendered the ALJ's Decision the final decision of the Commissioner. AR 1–3. On December 22, 2023, Claimant commenced this action for judicial review. ECF No. 1.

Claimant filed her Opening Brief on March 24, 2024. ECF No. 10. The Commissioner filed an Answering Brief on April 24, 2024. ECF No. 12. Claimant filed a Reply Brief on May 7, 2024. ECF No. 13. The court decides the matter without oral argument under Local Rule 7.1(c).

### III. STANDARD OF REVIEW

Congress has provided a limited scope for judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (internal quotation marks and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

2015).  First, courts "leave it to the ALJ to determine credibility,[5] resolve conflicts in the testimony, and resolve ambiguities in the record."  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-523 (9th Cir. 2014) (internal quotation marks and citation omitted).  If the evidence is "susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is "'inconsequential to the ultimate nondisability determination'" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1099).

---

[5] In March 2016, the Social Security Administration eliminated use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character," but "rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work."  SSR 16-3p, 81 FR 14166, 14167 & n.1.

Nevertheless, "[a] clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Consequently, "a reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ"). The court is instead "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

## IV. **DISCUSSION**

The Social Security regulations applicable to claims filed after March 27, 2017—such as in this case—preclude an ALJ from deferring to or giving "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (explaining how the SSA considers medical opinions and prior administrative medical findings).[6] And

---

[6] Prior to the revised regulations, ALJs were required to give greater weight to the opinions of treating physicians than to the opinions of examining physicians, and to assign greater weight to opinions of examining physicians than to opinions of non-examining physicians. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995), *superseded on other grounds by regulation*, Revisions to
(continued . . .)

7

while an ALJ must articulate how persuasive he found all the medical opinions[7] or all the prior administrative medical findings,[8] 20 C.F.R. § 404.1520c(b), he may do so in a single analysis considering certain factors; that is, he is not "required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id*. at § 404.1520c(b)(1).

Nevertheless, an ALJ must consider a medical opinion's supportability, its consistency, and the relationship between the source and the claimant, among other factors. *Id*. at § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors an ALJ must consider—and explain they were considered—when determining how persuasive the ALJ finds a medical

---

Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Woods*, 32 F.4th at 789–90). Under this pre-2017 standard, an ALJ was required to provide "specific and legitimate" reasons to reject the opinion of a treating or examining doctor. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31).

[7] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2); *see also Woods*, 32 F.4th at 789 n.2 ("Medical opinions" is comprised of evidence from any "acceptable medical source": medical professionals other than physicians, such as psychologists and certain advanced practice nurses and physician assistants (citing 20 C.F.R. § 404.1502(a)(2), (7), (8); *id*. § 404.1527(a)(1) (former regulation defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)").

[8] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review in your current claim based on their review of the evidence in your case record . . . ." 20 C.F.R. § 404.1513(a)(5) (describing categories of evidence).

8

opinion or prior administrative medical finding. *Id.* at § 404.1520c(c)(1) and (2);[9] *see also Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b) and (b)(2) ("The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.")); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023); *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence [and supporting explanations].'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical

---

[9] "We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

20 C.F.R. § 404.1520c(c)(1) and (2).

sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

*Woods* determined that the former requirement that an ALJ was to provide "specific and legitimate reasons for rejecting a treating or examining doctor's opinion . . . is incompatible with the revised regulations." *Id*. (internal quotation marks omitted). Now, under the revised regulations, an ALJ must articulate his reasoning, addressing how he considered the supportability and consistency factors. *See, e.g.*, *Howard v. Kijakazi*, 2023 WL 6141372, at *5–6 (D. Haw. Sept. 20, 2023) (citations omitted). And he "must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence." *Id*. at *6 (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks omitted)); *Kolish v. O'Malley*, 2024 WL 2878241, at *11 (D. Haw. June 7, 2024).

Here, the ALJ determined that despite Claimant's current and past impairments—primarily alcohol use disorder, post-traumatic stress disorder, depressive disorder, and agoraphobia—she

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could understand, remember, and carry out simple instructions and make simple work-related decisions; she could tolerate occasional changes in a routine work setting; she could tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks,

10

> significant independent judgment, or a production rate pace; she could have occasional contact with supervisors and co-workers and no contact with the public.

AR 26–27.  Given that finding, the ALJ ultimately found that she was not disabled because "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 32.

In making these findings, the ALJ rejected several psychiatric examination reports from 2021 and 2022 by Drs. Higashino and Aurellano that concluded that Claimant, among other findings, had "very limited" or "moderately limited" functionality and was "[u]nable to function 3/4 of the time" or "1/2 of the time.  AR 1277, 1282, 1292, 1297.  As for "employability," those psychiatric examinations had concluded that, because of her impairments, Claimant was "[u]nable to participate in *any activities* except treatment or rehabilitation."  AR 1277, 1282, 1292, 1297.[10]

In particular, the ALJ's decision recognized those findings:

> Evaluations completed by consultants for the Department of Human Services (DHS) have also been considered.  In April 2020, Nicole Aurellano, Psy.D., indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 50% of

---

[10]  A July 31, 2021 psychiatric examination by Dr. Higashino found Claimant "[a]ble to participate in activities (e.g. work, education, training, etc)" for "less than 30 hours weekly with reasonable accommodations," commenting that "Client needs to be clean and sober along with effectively addressing her past trauma before seeking employment."  AR 1287.

    the time (Exhibit 3F/26).  In September 2020, Dr. Aurellano indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 75% of the time (Exhibit 3F/15).  In February 2021, Dr. Aurellano indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 50% of the time (Exhibit 3F/6).  In July 2021, Dale Higashino, Psy.D., indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 50% of the time (Exhibit 17F/17).  In December 2021, Dr. Higashino indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 75% of the time (Exhibit 17F/12).  In July 2022, Dr. Higashino indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 75% of the time (Exhibit 17F/7).

AR 30.  He gave the following reasoning (in full) in rejecting those findings:

    The limitations provided in these six opinions by DHS contractors are not well supported.  These have not provided warrants for such a severe limitation.  For example, when determining that the claimant would be unable to function at least 50% of the time, a box is checked, and no explanation of the estimation is given.  These opinions are also inconsistent with the overall record.  As stated, Dr. Luke noted that the claimant had good cognitive testing results, was capable of performing several activities of daily living, and was able to socialize with friends and others attempting to maintain sobriety (Exhibit 5F/2-4).  In May 2021, the claimant denied any current depression to Evarts Fox, M.D. and further noted that it "rarely" occurs (Exhibit 10F/5).  She also stated that her anxiety was only 5/10 severity and has been improving (*Id*.).  The claimant stated that her energy was "good" and that she was now able to sleep six hours a night, where she had trouble sleeping while abusing

12

> alcohol (*Id.*). In October 2022, the claimant reported to Angela Gough, D.O., that her anxiety "comes and goes but not too bad" (Exhibit 16F/5). The claimant stated that she was happy with her current dose of fluoxetine, suggesting that it had been beneficial (*Id.*). Thus, the DHS evaluators have provided speculative opinions with severe restrictions that are inconsistent with evidence of generally adequate cognitive and social functioning. For these reasons, the opinions provided by DHS evaluators are not persuasive.

AR 30–31.

First, the court disagrees with Claimant's position that the ALJ did not adequately address consistency, i.e., whether the opinions of Drs. Higashino and Aurellano were consistent with the other evidence in the record. The ALJ found the opinions inconsistent by, among other reasons, comparing them with an opinion of Dr. Luke, with Claimant's statements made to Dr. Fox, and with her reports to Dr. Gough. In short, the ALJ analyzed consistency—or inconsistency—in rejecting the opinions of Drs. Higashino and Aurellano.

But the ALJ performed *no* supportability analysis. He states only that the opinions "are not well supported" because they "have not provided warrants for such a severe limitation." *Id.* at 30. It appears that the word "warrants" is a scrivener's error; the sentence likely should read "have not provided *reasons* for such a severe limitation" or "have not provided *reasons warranting* such a severe limitation." But, in any event, the ALJ is wrong; he says "[f]or example, when determining that the claimant would be unable to function at least 50% of the time,

13

a box is checked, and no explanation of the estimation is given." *Id.* at 31.  On the contrary, however, the psychiatric examinations provide ample explanations earlier in the reports.  For example, on the page before concluding on July 7, 2022, that Claimant is unable to participate in any activities except treatment or rehabilitation, Dr. Higashino provides the following "summary" that "describe[s] how psychiatric and functional findings affect employment":

> Client continues to show symptoms related to anxiety where she is not able to leave the home without the being escorted by her boyfriend and will not ride public transportation.  Tends to think others are talking about her and this increases her anxiety.  Client struggles to sleep as she is concerned about her boyfriend's health status or she is thinking about her own psychiatric issues.  Continues to utilize alcohol on occasion to address her anxiety and depression.  Client continues to work with Action with Aloha to address her alcohol use.  Client also has a history of enduring abuse, both as a child and in adulthood.

AR 1276.  And on the page before that, Dr. Higashino provides detailed notes of Claimant's condition such as "[h]er boyfriend accompanied the client into the examination and provided additional information.  At times during the interview, the client would look towards the boyfriend for help in answering a question," AR 1275, and:

> Client indicated concerns related to depression and anxiety.  Noted issues with sleep, worry, paranoia, and panic attacks.  Client shared she has had about 3 panic attacks in total where she will blackout and faint to where she has hit her head.  The paranoia occurs when she is at

14

> a grocery store or hearing someone that seems to be talking to her. She is not able to shop alone and requires her boyfriend to go with her. The client said she is not able to ride the bus due to anxiety. She struggles with her sleep because she is worried about her boyfriend's medical condition (i.e., cancer) and when she starts thinking about the psychological problems she is having. There are times when the client will become confused and not know how to respond appropriately.

*Id.* Dr. Higashino also includes observations from a "mental status exam," describing Claimant's mood as "anxious" and eye contact as "[a]voidant at times." *Id.*

Similarly, at a July 31, 2021 examination where Dr. Higashino found Claimant's functional limitations to be "moderate," Dr. Higashino included a "summary" that reads:

> Client continues to struggle with remaining sober. She has recently enrolled in an Intensive Outpatient setting after completing the Queen's Dual Diagnosis program. Still finds crowded settings uncomfortable to where she will isolate herself from others.

AR 1286. And with that examination, Dr. Higashino reported the following observations:

> Client notes concerns with depression and anxiety. Indicated issues with sleep, worry, paranoia, flashbacks, isolation, concentration, phobias, seeing things others do not, and panic attacks. Client stated she has not had a recent panic attack, but they occur when she becomes anxious. She will start to hear ringing in her ears, begin to feel dizzy, start perspiring, and then she will shut down where she is not able to recall what she has done.

> Crowded situations (e.g., riding in a full elevator) tend to bring on these panic attacks. Her seeing things others do not are related to her PTSD diagnosis. When she feels people are looking at her, she thinks they are angry with her even though she does not know who they are.

AR 1285. The same type of reasoning was provided in the psychiatric examinations by Dr. Aurellano in making her opinions regarding Claimant's employability. *See* AR 1295–96; 1290–91.

In short, the ALJ rejected these opinions without performing any supportability analysis, and issued a decision that wrongly stated that the opinions had no explanations. AR 30–31. The ALJ's opinion is plainly deficient for failure to comply with one of the "most important factors" that an ALJ must consider. 20 C.F.R. § 404.1520c(c)(1). *See also Woods*, 32 F.4th at 792 (reiterating that an ALJ's decision must "explain how [it] considered the supportability and consistency factors" in reaching its findings) (quoting § 404.1520c(b)(2)); *Kolish*, 2024 WL 2878241, at *12 (reasoning that "without any explanation connecting the medical evidence with Plaintiff's medical conditions and symptoms, the ALJ cannot reject these opinions as unsupported"); *Akiu v. Kijakazi*, 2023 WL 6311447, at *8 (D. Haw. Sept. 28, 2023) ("The ALJ cannot reject a 'doctor's opinion as unsupported . . . without providing an explanation supported by substantial evidence. The agency must . . . explain how it considered the supportability and consistency factors . . . ."); *Howard*, 2023 WL 6141372, at *6 (remanding because

16

"the ALJ failed to provide any supportability analysis"); *Dalton v. Kijakazi*, 2023 WL 2480806, at *6 (E.D. Cal. Mar. 13, 2023) (finding that because the ALJ did not address supportability, the assessment was not supported by substantial evidence).

The ALJ's legal error in failing to analyze supportability ultimately affected the finding that Claimant is not disabled, and thus is not harmless and requires reversal. *See, e.g.*, *Treichler*, 775 F.3d at 1099 ("An error is harmless if it is inconsequential to the ultimate nondisability determination.") (citation and quotation marks omitted); *Stout*, 454 F.3d at 1055 (finding error not harmless for the same reason); *Akiu*, 2023 WL 6311447, at *10 (finding errors in supportability analysis not harmless "because these errors ultimately affected the ALJ's finding that Plaintiff is not disabled"); *Howard*, 2023 WL 6141372, at *1 ("[T]he ALJ committed legal error by failing to discuss the supportability factor . . . and further, for rejecting Claimant's symptom testimony . . . . These errors were not harmless as the ALJ's deficient findings on migraines lead to the determination of not disabled.").

In its brief, the Commissioner speculates that the ALJ may have rejected Dr. Higashino's and Dr. Aurellano's opinions as unsupported because they were not based on objective medical evidence and were based solely on Claimant's

17

subjective complaints during the examinations.  *See* ECF No.12 at PageID.1369.  The court is not persuaded by that argument.

Initially, the ALJ never gave such reasoning, and the Commissioner's speculation cannot be considered here.  The court must review an ALJ's decision "based on the reasoning and factual findings offered by the ALJ," *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009), and is not permitted "to augment an evidentiary record left open, incomplete, or unaddressed." *Sadira D. v. Comm'r of Soc. Sec.*, 2023 WL 3168616, at *2 (W.D. Wash. May 1, 2023).  *See also Marsh*, 792 F.3d at 1172 (explaining that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ"); *Connett*, 340 F.3d at 874 (reiterating that the court is "constrained to review the reasons the ALJ asserts").

Further, from the court's review of the psychiatric examination reports, it is clear that the reports were based, at least in part, on Drs. Higashino's and Aurellano's independent observations.  *See, e.g.*, AR 1276 ("Client continues to show symptoms relation to anxiety where she is not able to leave the home without . . . being escorted by her boyfriend and will not ride public transportation."), 1275 ("There are times when the client will become confused and not know how to respond appropriately."), 1295 ("Mood: Depressed" "Attitude/Interpersonal: cooperative, but guarded").  And the regulations require an

18

ALJ to explain supportability based on "the objective medical evidence *and* supporting explanations presented by a medical source."  20 C.F.R. § 404.1520c(c)(1) (emphasis added).

Although the ALJ's decision was thorough and relied on some evidence in the record that might otherwise be sufficient to substantiate a finding that Claimant is not disabled (*see, e.g.*, AR at 26–29), the ALJ's failure to address the supportability factor in rejecting these opinions or findings requires the court to reverse and remand the matter.[11]

///

///

///

///

///

///

///

---

[11] Given this error, the court need not address whether the ALJ also erred in failing to consider the conclusions (that Claimant was "incapacitated due to physical or mental impairment") of Heide Kiyota and "Dr. Cumes," which appear on several "GA/TANF Determination and/or Referral Forms." *See* AR 1271, 1273, 1278, 1283.  Those forms appear to be certification documents based on a review of the psychiatric reports for purposes of benefits under a Temporary Assistance for Needy Families program.  It is unclear whether those certifications are "medical opinions" under § 404.1513(a)(2) or whether they are "prior administrative medical findings" under § 404.1520c(b).  But whether or not they should also have been addressed by the ALJ, the matter must still be remanded based on the ALJ's lack of supportability analysis in rejecting Drs. Higashino's and Aurellano's opinions.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS this action to the ALJ for further proceedings consistent with this Order.  The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 28, 2024.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Chung v. O'Malley*, Civ. No. 23-00619 JMS-KJM, Order Reversing the ALJ's Decision and Remanding for Further Proceedings